No problem. Great. Thank you so much. So we're going to start off with the J.M. case versus Summit. Council, give me one second, if you would. Now, how are you today? I'm good, Judge. Good. What amount of time would you like to reserve, sir? I would like to reserve two minutes for rebuttal, Judge. Two minutes it is. And I need you to just give me another second here. I don't want this to go off in the middle of your presentation. Okay. That would be bad. I'll adapt. Go ahead, sir. Thank you so much. May it please the Court, my name is Thomas O'Leary. I'm an attorney with Walsh-Pizzeria, Riley & Falanga, and it's my privilege to represent J.M. and E.M. in this matter. As I said before, I'd like to reserve two minutes for rebuttal. As set forth in our papers, there were a multitude of errors that warrant reversal of the district court's decision. There are four errors that I think are particularly significant, which I'd like to address with the Court this afternoon. The first is that the district court erred in holding that Summit fulfilled its obligations on the child fine. Let me ask you this question. You don't want to get through all four. That would mean that we're a quiet bench. I didn't expect to make it all the way through all four, Judge, but I figured I'd give it a shot. Like during the moots, okay, if I could get to four. So let me ask you this. To achieve the relief you seek, do we need to rule that the district court cannot summarily reject post hoc evidence and must apply the Susan N. standard? I don't think so, because I think the record is sufficient based on the evidence that was before the court based on the information that was available as of February 8, 2016, when the non-eligibility determination was made. So how should we think about Susan N.? Well, I think Susan N. really, I think the later required evidence goes to the reasonableness of the school district's determination. And Susan N. held was an IDA eligibility case, and the court stated or held that if required evidence can be used to assess the reasonableness of the school district's determination. And that was in the context of an eligibility case. But eligibility has three elements to it, as I understand it, right? It has disability, it has adverse effect, and it has needs. We don't know what needs means, but special education. And so when Susan N. says that you can use after required evidence to make an eligibility determination, it does not say that you can use after required evidence to make a disability determination. Most we know from Susan N. is it can be used at some part of that three-part test. And in the context of IEPs, the whole point of Susan N. was that for ongoing things, for instance, maybe the needs special education or the adverse effects of a student's learning, those might involve later required evidence. But disability has never, as far as I can tell, been used, has after required evidence been used. So it's one thing to say it can be used for eligibility determinations broadly, it's another thing to say it can be used for the very first prong, disability. Do you have any case ever that says it can be used and was definitely used for disability? No, and I, I was proffering the after required evidence more to the reasonableness of the determination as to need. In terms of, you know, from our perspective, some had had an obligation to evaluate in all areas suspected disability, and they were on notice by virtue of the rule of law. The rule of law diagnosis is that this child had a, there was a reasonable likelihood that this child had autism in the ADH state by virtue of the rule of law diagnosis. And therefore, that triggered the duty, the affirmative duty of summit to evaluate on the child. But they did certain things. They didn't sit on our hands entirely with the affirmative duty. They might not have done as much as you like, and then we get to a question of degree, how much you have to do to satisfy your affirmative duty. But this isn't an absence, a complete non-feasance claim. It's more a, you didn't do quite enough degree sort of claim. Well, the New Jersey regulations specifically require the school district to hire or engage a qualified professional. And the regulations require for autism a neurodevelopmental physician to assess the child, which was not done here. And for other health impaired, for specific learning disability, you need a medical assessment. Summit didn't do that. They were on notice. As a matter of fact, they were on notice. And they were on notice as of October 10, 2015. Part of your argument, I presume, is that the ultimate determination by summit that CM was disabled is something that we should take into consideration or no? I think we have to take that into consideration. Because it's our position that he was entitled to special ed education as of February 8, 2016. And to be entitled to special ed, he has to have a disability. And summit didn't meet its obligations on the child fine by properly assessing him in the first place. Therefore, they can't determine need without at least determining that there was a qualifying disability in the first instance. So your argument is really two-fold. It's that even if you set in stone the date of the eligibility determination, there was enough for them to know at that point that there was enough evidence in the first place that he was eligible. And that even if you look further on at what their ultimate determination was, which CM is disabled, that that was enough for both the ALJ and the district court to have made a disability determination. Well, my argument is as of February 8, I mean, summit made a procedurally invalid determination that the child was not eligible for special ed. Because it did not assess in all areas of suspected disability. It was their obligation. They had to do that. They did not do that. So therefore, you know, if you don't assess for disability in the first instance, you can't determine need. And that's really my argument. And at the end of the day, ultimately as it turned out, this was not, you know, there's case law out there that says a procedural violation is not actual unless it's substantive. Well, it turns out this was a substantive violation because the child had these conditions. And they had an affirmative obligation to assess before they determined need. So, but you can't blur the line between procedural obligations and substantive obligations completely. I mean, because there are certain aspects that are procedural, right? What did you do? What did summit do along the way? But then where you're getting to is interesting, right? Because they do blur a little. Because you don't have a procedural violation. If the procedural violation has no adverse effect and no impact, then really so what? There's no cause of action. No harm, no foul. Yeah. But so what you have to do then is you have to show as a result of this procedural violation, they would have otherwise found as of February 8th, the child to have been disabled. Right? Don't you have to show that? I don't think I have to show that. Because in New Jersey law, they had the burden of proof from production at the due process hearing. They have the burden of proof from production. So the parents don't have that affirmative showing. They don't have that. Well, that's part of the error of the district court. Correct. That's one of the errors I'm contending, yes. Does your position that we send this to the district court to determine, does it not have any discretion in determining your district court if we were to prevent it? Well, I think there's sufficient evidence in the record for this court to direct and enter judgment in favor of the parents on counts one and two of the amended complaint, based on the failure of summit to approve it. To fulfill its obligations under child fine. In DK, this court held that a poorly designed round of testing does not satisfy school district's obligations under child fine. And in this particular instance, if you look at the evaluations that were done by summit, none of them were targeted towards autism or ADHD. They were all very generic evaluations that were more broad brush measures. But none of them were specifically targeted to assess for autism and ADHD. And they had affirmative obligation to assess for those conditions, prior to the ineligibility determination. And that's our position. It's interesting that you bring up DK, though, because DK involved another, what I would call, particularly young student. And so these issues, I mean, assessing ADHD, assessing autism is harder, as I understand it, earlier in life. But children can be diagnosed with autism at three years old. This child was six years old. They had the obligation to hire the professional to fulfill that obligation. They failed in their obligation. That's our position. And so in essence, what you're saying is, we look to New Jersey law. New Jersey law says, once you have suspicion, reasonable suspicion, I think is the phrase, of autism, then you have to do, then New Jersey law specifies this process. Because you did not do that process, we have just a per se child find obligation violation. Yes, I think so. And it was a substantive violation, as confirmed, ultimately, because the child did have autism and ADHD. And that was determined on March 31, 2017, a year later. But they should have assessed long before that. And the indications were there. But if there is a child find defect, and you want to recover for that, then you have to show that that defect is not there. And that that defect would have been, you know, as you say, no harm, no foul. It would have to be harm and foul. And so you would have to show, as of that date, that there was a disability that adversely affected student performance or student learning, and then the student needed special education. And the school district comes forth and says, as of that date, we have a lot of evidence that suggests that the general education requirements were sufficient for the student to progress in learning. What do you say to that? Well, the school district's evidence was anecdotal at best, and they have the burden of proof and production at the hearing. None of the CM's teachers testified at trial. The district court cited, made reference to assessments by the summit that showed that his reading had progressed. But if you look at the record, there are no assessments entered into evidence showing that this child's reading progressed. And further, there are no assessments or writing samples, none of that is entered into evidence. But, you know, Dr. McGuffick did the neuropsychological evaluation. She found that he had significant deficits that impacted his education and a need. Specifically, he had weakness in receptive and expressive language, weakness in vocabulary and listening comprehension, impairments in reading accuracy, fluency, and comprehension, and his resistance to writing was rooted in combined language, executive function, and motor control weaknesses. Even summit's teachers, the teachers noted that CM's areas of weakness were in reading, comprehension, fluency, and expression. And that was all part of the evaluation process. If you look at the report card for first grade, in the first and second marking periods of first grade, he received grades infrequently and sometimes in five out of eight behaviors that affect learning. So I think there's enough in this record for judgment to be entered in favor of the parents. And that's one of the releases we're requesting. Let me ask you, remand us to the district court to hear your arguments that you're making to us, and to hear the district's position on it as well, and make a determination as to whether or not to make factual determinations and exercise discretion. Well, I think there's enough as a matter of law based off the record. You know, an IDA case, typically, when you do a review, it's based on a stipulated record. And it's a modified, well, I don't want to talk about standard review, but it's a stipulated record, and there's enough for this court to enter judgment, or a direct judgment to be entered. Here's what I think Judge Cowan is getting at, and tell me if you agree or disagree, okay? We talked about Susan N. earlier. And part of the reason that I wanted to talk about Susan N. is that it seemed to me that the district court was not acknowledging that it could take, after acquiring evidence, into effect, right? And Susan N., we can talk about what Susan N. says, let's say, with exactitude, but one thing that Susan N. says is that it's sort of like the sentence, if you will, that we had back in the day. You have to acknowledge that you have the discretion under the guidelines, right? You have to acknowledge that you can exercise that discretion. Here, as I read the district court opinion, it doesn't acknowledge that it could get to the after acquired evidence. I agree with you. If it had acknowledged that, we'd be in a different posture, right? So that's the suggestion that I think that Judge Cowan, and now I would like to pursue with you, because I'm sorry, Judge Cowan, did you want to jump in? Yes, that's exactly my point. Yeah, so the red light's a suggestion, and it's a suggestion that I want to ignore at the moment. Yes, I figured as much. I agree with you that the district court established a bright line rule, and basically said it can't consider later acquired evidence. And I agree with your proposition that the evidence, they could, he had discretion to review that evidence, and that would have, likely would have been affected the ultimate decision on the merits. I do agree. But I think, setting that issue aside, I still go back to what I said before, is I think there was enough in the record, you know, for the, before we even got it. And that's why I focus a lot of my brief on, you know, as of February 8th, you know, there was enough for the determination of eligibility as opposed to non-eligibility. I'm sorry. It's not like the district court did nothing, the district court said, I'm not considering after acquired evidence because I don't think it's relevant. Yeah, well, I didn't say the district court did nothing. But so the point is, the district court said, I'm not considering after acquired evidence because I don't think it's relevant to the disability determination. And I asked you earlier, and you said no court's ever considered that you know of after acquired evidence for disability determination, which suggests that there's no real grounding for it being relevant, and at a minimum, courts typically don't consider it. If they typically don't consider it, then it would probably not meet the definition of relevant, which is, as I recall, it tends to make a fact more likely or unlikely to occur. I think the later acquired evidence is directly relevant to need. But not disability. Well, I mean, I think, well, obviously there is, because there was ultimately finding the child had the disability, so yes, it is relevant. It was, I mean, if the child turned out, if they didn't assess for autism and the child didn't have autism, then it would be, like I said before, no harm, no foul. But this child had autism, and it turned out it was confirmed. I don't know how else a parent, if a school district does not properly assess a child as required in the beginning, I don't know how else a parent challenges that finding without some sort of determination or evidence later. I mean, the school district has the affirmative obligation to assess for disability. They don't do it. How does a parent challenge it any other way without later acquired evidence? I think you answered your own question when you said the school district bears the burden. A parent just says you didn't meet your burden, and that's the way of challenging it. Right, and for those reasons, that's why I think the parents should prevail in this appeal and should be entitled to judgment. How is your position any different than the amici? Well, our position is just basically on the later acquired evidence, it's relevant to the reasonableness of the school district's decision. I think amici, I don't want to speak for amici, but they take a broader view in terms of, and I don't think they want to limit it to the reasonableness. I'll let Ms. Valverde address that, but our positions diverge on that. I mean, I'm basically sticking with Susan Ann, I don't need to take that on. I don't need to take that on, I have no desire to. Judge Cowan, do you have anything else, sir? Nothing. Okay, thank you so much. We'll hear from you on rebuttal. Thank you very much. Oh, amici. No, do you care where amici goes? I figured you wanted me to, so you could respond. Right, sure. Good afternoon, your honors, my name is Jennifer Rosen-Valverde, and I'm an attorney with the Rutgers Law School's Education and Health Law Clinic. The clinic represents amici, which are several non-profit organizations and advocacy groups that advocate on behalf of children with disabilities, including some of New Jersey's most vulnerable children and their parents in special education matters. Thank you for allowing me to appear today. I would like to start, actually, your honors, with the question of whether or not post hoc evidence should be considered in a disability determination context, because clearly that was a question that you did pose. And amici would firmly answer that with a yes, it should be considered. And I think, if your honors will indulge me just for a moment or two to review some of the relevant principles of the act in case precedent, it will all come clear. So we all know that the IDEA's purpose is to ensure that children with disabilities have available of faith, and to ensure that the rights of children with disabilities and their parents are protected. Now, we know that the IDEA includes an entire section on procedural safeguards, and the Supreme Court in rally determined that the importance of those safeguards cannot be gainset. These safeguards include things like the right to present a complaint regarding identification and evaluation of a student, the right to an impartial due process hearing where parties can present evidence, and the right to a civil action where the court shall hear additional evidence. Nothing in the plain language of the act restricts or bars court's consideration of post hoc evidence, or otherwise limits the fair hearing rights of parents or children, or limits the availability and scope of relief. Let me just inject there, I mean, your point about the text of the statute is very interesting, because the statute says that the court shall hear additional evidence at the request of a party. But we know that any time a court hears evidence, the federal rules of evidence apply. So this isn't a, the IDEA is not creating a wild west where privileged communications can come in, where hearsay is just a free-for-all, where relevance has no matter. I assume that when we say shall hear additional evidence at the request of a party, it's shall hear additional evidence as bounded by what would come in through the federal rules of evidence at the request of a party. We read in, we understand that federal courts hear evidence consistent with the federal rules of evidence, correct? Absolutely, and that's what we argued in our brief, which was that we are asking for broad consideration of the evidence in light of the rules of evidence governing the particular tribunal. And so what gets interesting, though, is if, after acquired evidence, is not relevant to a disability determination, then it would not be part of what courts should hear. So we're kind of into this just good old-fashioned federal rule of evidence question about relevance, and relevance looks to the nature of legal duty and other things like that. You have a divergence with counsel for appellant who suggests that maybe after acquired evidence could be relevant to adverse effects or special needs, but disability is really hard. So I guess I'm most interested in why you think it should be relevant to the disability determination. The reason why is that for any parent who is trying to show, who has a child who has a disability in the district is that that child does not have a disability, the only way in 95% of those cases for the parent to prove that they do is through after acquired evidence. Most parents, particularly parents who are under-resourced, are low-income, they don't have the ability to go pay for outside evaluations as happened in this particular case, where there was a neuropsychological that was done originally. Most parents have to wait until the school district makes a decision that they disagree with, and only then do they have the right to an independent evaluation at public expense. So if the parent cannot afford any sort of outside evaluation or expert, that right to get it at public expense is only triggered after they have disagreed with a decision by the district, and that decision could be a decision not to evaluate the child, or that the child is not eligible, or they haven't performed the appropriate evaluation. And I highlight, I'm sorry. Excuse me, how can we square that with the Susan N., which said with respect to reasonableness, reasonableness is whether this reasonable decision at the time that they made their decision. So the evidence must have to be considered with respect to the reasonableness at the time they made their decision. Correct. You're blindsiding the decision, we only are guided by what was reasonable at the time they made the decision. Correct, but if they don't have the correct information, or did not act in compliance with the law, or did not properly exercise their judgment and expertise in order to identify and make critical decisions regarding the lives of disabled children, or if the district could have, should have, had a reasonable decision, and would have had access to that information, had they acted properly and in compliance with the law, we would not end up in that situation. So Susan N. is based on three very important presumptions. The first is that you give deference to school districts where they are properly using their expertise in judgment. The second is that the district will comply with the law, and the third is that the district could not possibly have had access to that information. And the reason why that's there is because, as this Court said in Susan N., it would be unfair to have a rule that financially penalizes districts for a decision that turns out to be inadequate in hindsight, even though it was appropriate when it was made. But in Meekeyer, arguing in essence that we have to preserve that principle, but it has to be balanced against and not come at the expense of ensuring that children with disabilities have the right to a full and fair hearing. That many parents have in order to show that their child really was disabled when the district was saying that the child wasn't. And I just want to harken back a moment to Schaefer v. Wiest, which was a Supreme Court decision post-dating Susan N., which clearly highlighted the importance of independent evaluations as leveling the playing field. Because, and you know, what the Court said there was that the procedural safeguards level the playing field by protecting children with disabilities who have no unique informational advantage or expertise. And the Court went on to say and to highlight that the independent evaluation gives parents an access to an expert who can evaluate all the materials and give them an independent opinion. If we are removing that, if we are saying to parents, you don't have this option, you cannot produce post-hoc evidence at the identification or evaluation stage, we are then taking away the firepower that the Supreme Court said the procedural safeguards give parents in order to match the opposition. They will not have a way to match the opposition. In the hypothetical you pose, a family of limited resources doesn't get the opportunity for an evaluation until after the eligibility determination. In that situation, your point is they would never have a remedy if that post-hoc evidence wasn't there. Correct, Judge. So, let's just spin out the hypothetical. First grade, there's an eligibility determination, it's negative to the child and disability. When is there an opportunity for that issue to be revisited? So, the parent could ask for another evaluation, but typically a district is going to want to wait at least a year before they perform another initial evaluation of the child. And so that already would be a year later. So, let's say they get that evaluation, then let's say the evaluation says the child is now disabled. And let's say this is a situation, if I could change your hypothetical please, let's say it's a third grader who the parent believes has a reading disability and the child is reading maybe a year below grade level and so they do an evaluation, they find the child not reading, they find that the child is five years below grade level. So, a child can't magically become five years below grade level, right? That had to have occurred over a lengthy period of time. If we're not allowing that post-hoc evidence in, that child will not get a remedy to be made whole. And that is one of the most critical pieces of the IDEA and that's something that this circuit has also prided itself on in matters like GL, in matters like Lester H, which is ensuring that children have available to them a remedy to be made whole. And it's amici's position that we cannot be depriving them of that. So, can I just use that? The student then three years later is now reading five years below grade level, which at math suggests that they regressed if they were previously one year below grade level. Really, really, really. I mean, could happen, I suppose, right? Tragically. But in that situation, wouldn't the student have the ability to just reinitiate a request for special education instead of say, I'd like it to go back three years? Can you just say, hey, right now, I'm five years below grade level, I'd like to reinitiate my request for eligibility? They certainly could reinitiate at that mark, but the problem is, is what about that gap? That gap can never be made up. That gap in time where they should have been found eligible and did not receive appropriate special education services cannot be made up if they cannot use that later acquired evidence to show that there was a mistake made earlier on. And that's where the law draws the balance. And the law seems to suggest that the school district's decision has to be reasonable at the time it makes an eligibility determination. And after acquired evidence is something that was not available at the time the eligibility determination was made. And so it strikes me that maybe, you know, if the law said reasonable, you know, in light of anything, maybe that would, after acquired evidence would work. But it suggests that there is a temporal dimension to the reasonableness determination. And if we're to honor that, then it seems that after acquired evidence of disability, at least, has a hard time being relevant. I respectfully would disagree. I think that at the point in time that the after acquired evidence is, the after acquired evidence has to be considered, because otherwise, as you are giving a child the right to file a complaint regarding identification or evaluation, why is Congress giving families that right to file a complaint at those stages, but then we're going to take away their right to get any sort of a remedy for a violation of law? Now I understand, maybe the district in that particular example, let's say they did the right thing, but what about the situations where the district violates the law? As here, they failed to test in all areas of suspected disability. There were clear rule-out diagnoses that existed in this case. Rule-out doesn't mean it was ruled out. Rule-out means we strongly suspect this, but more testing needs to be done. And the regulation... That's exactly right. But the case law is clear. And the reality is that we can't be penalizing children for the mistakes of districts. And I understand that we have to do a careful balancing, right? So you don't want to penalize a district by substituting judgment, but that substitution of judgment has to be balanced very carefully against whether the district did the right thing. Should they have gotten that remedy? Should they have been penalized for violating the law? If we're not asking those questions, and we're just simply saying it's irrelevant because it came too late, then we're not giving children with disabilities the remedies that they should be able to obtain. Well, let me ask you this question. So Judge Phipps asked you some interesting questions. I want to just... I like hypotheticals. So eligibility determination is January 1st. I know it's a holiday, but it's my hypothetical. January 1st, right? A test is conducted on the 2nd, and a determination is made on the 10th. The determination is the child is disabled, right? So if I understand the district's view in that hypothetical, it would be it's after acquired, but it does go to the question of disability. Maybe we could put it aside, but because it goes to the question of disability, then is that a different paradigm as you think about Susan Ann? Did I... I wasn't clear. Okay. Sorry. I'm not sure I'm understanding. I'm sorry. No, no, no, no. My fault. Better hypothetical. Same underlying facts. On the 10th, you get a report that the child is autistic. Your view, amici's view is that clearly comes in, and that clearly goes to the disability... the ultimate disability determination. Correct. But then, of course, it's up to the court to decide how much weight to give it, right? We're not taking away the court's ability to determine how much weight to give the evidence, but to summarily exclude it, that should be out of the question. It absolutely should be excluded. And Susan Ann, if you'll bear with me for a moment, the court there even talked about would the evidence assist the court in ascertaining whether Congress's goal has been and is being reached for the child involved. So if the answer to that is yes, then we figure out what due weight it's given, and I would certainly argue that the answer there is yes. So just to tease this out, the reason that you're able to argue that is because of a passage of Susan Ann, a line in Susan Ann, as I said, you could not argue this. I mean, just so I understand the meats of your argument, you could not argue this in the Fifth or the Ninth Circuit, which is why I reached the opposite conclusion, right? The Fifth and the Ninth Circuit have reached a very strict conclusion that your snapshot is your snapshot and you can never get evidence in. So this is an open question here, closed question there.  That's why you're here. That's why you're at the podium. But the open question is whether the question here is determined, as determined by Susan Ann, is taken into account. You could deem it to be irrelevant, but take it into account. Yes, but I would argue that you can't simply deem it irrelevant because it came late, right, which is what we do see at times, where just by looking at the date of it, it's out. And we know that independent evaluations of public expense can take time, right? So a parent asks for one, you don't automatically get it. A district can then file for due process against the parent. That could be litigated for upwards of a year before it's finally maybe awarded by a judge. Then you get the evaluation. Now we're already one year beyond. And that's just the unfortunate circumstances. Counsel, Judge Cameron here. You've made certain references to the... They didn't do their job correctly when they evaluated the child. Therefore, it should be re-run again. But assuming that they did a good job, they did everything they were required to do in the district, is it your position that even though they did a fine job, they didn't do anything wrong, that after acquired evidence should be used, which they had no reason to understand. They didn't have before them at that time, and there was no reason why they could have considered it because it wasn't available. So, Your Honor, I believe that if the school district exercised this expertise and judgment wisely and properly, if the school district complied with the law, and if the school district were not in a situation where they should have had that information, then I think it would be an incredibly hard case to prove. To say, you know, I still think that it would get in in terms of answering that initial question of, will it help the court to ascertain if Congress's goal has been reached, but ultimately when you're according weight to it, I think at that point the court would say, we're not going to give it weight because we look at what they had at the time that they made their decision. We believe that everything that they had was appropriate. They did the appropriate testing. They obtained the appropriate results. They used their judgment wisely. This is not information they could have and should have gone off and gotten for any other particular reason, in which case we're not going to give it weight. And that's the judge's discretion. All right. But even then, if they did their job and after acquired evidence, which was impossible for the district to have had, shows that they should have done something differently, your position is they should use that, that the district court should allow that to be used. That it should be permitted to be considered, and again, given the weight that the court deems fit. But yes, I do, I do, amici do believe that the evidence should be considered by the court. So let me just follow up on Judge Cowen's question. It seems to me when I read your brief and hearing you today, you're arguing for a very, very, very broad principle that after acquired evidence has to be considered and it can get whatever weight the judge wants. But it strikes me that one of the things Judge Cowen prompted in my brain was that why aren't you arguing for a more narrow rule that says when there is approved child find violation, then in that instance we will tolerate the use of because that's the instance where you claim that the school district didn't do everything that it was supposed to do, and now you're trying to fill in as a parent or on behalf of a student for what they didn't do. So instead of this very, very, very broad rule, why isn't it because both appellant and amici tie both these arguments. They both lead with there's a child find problem and we need after acquired evidence. Why isn't the rule that you're advocating that upon proving a child find violation, then certain after acquired evidence may be relevant even if it would otherwise not be relevant. What's wrong with that position as a rule of law? I would want it extended beyond child find to also include eligibility. And eligibility is not considered a part of child find. Child find is locate, identify, and evaluate. So if we look at child find, but then also eligibility should be part of that. And the reason why is that again for the same reason that we're talking about a parent's ability to show that a child is disabled. Eligibility, the parent also needs to be able to have that ability to show after acquired evidence. Again, otherwise we're handcuffing the parents and not giving them an avenue to even prove a case. And I don't think that's what Congress intended, and I certainly don't think that's what the Supreme Court intended when they spoke about the fact that the procedural safeguards level the playing field for parents. Because if we start restricting the procedural safeguards and the access to a full and fair hearing and to have the evidence considered, we are not only taking away their firepower, but to use Justice Greenaway's language, we're creating an enormous loophole that districts can then jump through, whereby they can just simply reduce the amount of information that they're gathering because they're going to be home free. Because if a parent can't prove their case later through after acquired evidence. But that gets back to my question, if they reduce the amount of evidence that they're gathering, then they've got a child fine problem, and that seems to be the situation. I mean, I understand that you want a broader rule of law, but maybe it's the more narrow rule of law that's predicated on a child fine violation as a basis to use after acquired evidence for the eligibility determination. I mean, it strikes me that that gets at most of your means-based determination issues, yet it's not as broad as just all after acquired evidence at all times must be relevant, because that really runs into the problem that we have to evaluate that determination based on the reasonableness of the facts that were before it. I hear what you're saying. I think that, you know, amici would still advocate for the broader position, because, again, we are trying to advance court's discretion and balance the substituting judgment with the protecting parents. And I think that the courts are capable of doing that, provided that they receive really good guidance from this court. But you admit, you have to admit, at least consistently, you don't have to, but I'm going to suppose that you're going to admit that your means-based concerns are at their highest point when there have been child fine problems. In relation to this particular case, yes, child fine problems, absolutely. Would I make an argument that we have issues with IEPs and the need for them, but I'm not going to touch that here. Exactly, I'm trying to stay limited on this. Judge Cowen, do you have anything further, sir? No. Thank you so much, we appreciate it, and thank you to the other participants in the amici. Thank you. Good afternoon. I'm Judge Cowen, I'm a member of the District Court's legal group on behalf of Summit City. May it please the court, the evidence that's relevant before the administrative court, that's relevant before the district court, that's relevant before this court, was set in motion when Penn was set to paper, when the due process petition was written, in this case, now years ago. It was set in time in February of 2016, based on the data that was before the multidisciplinary committee at that moment, your honor. I'm always fascinated when I hear the Supreme Court, and they always, all nine, eight and a half, always go mid-sentence, so I wanted to make sure you finished your sentence. Thank you, your honor. So I want to pick up on a hypothetical, of course I'm going to change it a little bit, but I think the general hypothetical gets to the point that I'd like, and that is, you have a family that's challenged financially, and you get to a point, and you know, we're not really talking about the equity, or the equitableness, if you will, of the snapshot rule, but we're talking about should there be something that goes a little further, you know, in the applicability of Susanette, and how does it play into the paradigm that we have before us. So you have an eligibility determination that is adverse to the parents, and the major part of it is the parents couldn't afford to have an evaluation, right? A good Samaritan somehow comes out of Samaria, or somewhere else, and gives them the money for an evaluation, they get an evaluation, and the evaluation is that the child is disabled, has whatever, the malady is autism, et cetera. Is it your position that because of the application of the snapshot rule, there is no circumstance in which that evaluation, which goes to the question of disability, would ever come before a court reviewing an ALJ's determination? Yes, that is our position, but I think that, if I may say respectfully, Your Honor, it's almost creating a legal fiction if we were to say that we're frozen in time, and that there's no remedy that still exists. In looking at exhaustion, the district court considered this in Centennial, talking about the fluid nature of disability. All this is about learning, all this is about progress. At any time that family can come back to the table and request, and file another referral, consider evaluation again, a district, through its child find responsibility, if concluding earlier in your hypothetical, Your Honor, not eligible, when presented with additional data, would then reconvene. That's precisely what happened here, which is what led to a later finding of eligibility. Which could have been, if I may, Your Honor, could have been challenged. The IEP could have been challenged. The issue of fate could have been brought before the court, questioning whether or not progress was being realized. That's not before us. What's before us is actually extensive data, multiple evaluations by the district, multiple private evaluators, the private evaluators even sitting at that February 16 table, and opining, and not opining, by the way, that the student was eligible with the label of autism. Not opining, Dr. McGuffick, as eligible with the label of ADHD. Judge Phipps recognized this before, looking at the age of the student. Let's wait and see, that's what they said. Let me ask you this question. There was a subsequent point in time when the district said CM is disabled. Now, that, in your view, should play no role in looking back at this determination because of the snapshot rule. Yes, Your Honor, and I think if we take it a step further, almost looking at a subsequent remedial measure, I think there's significant policy considerations to not handcuff a district to only stick with one decision in perpetuity for fear that this is going to come back to bite us if we decide differently now. And I think that that also turns a blind eye, if you will, to the fact that the nature of disability is fluid. Academic demands change. Behavioral conditions may change. The efficacy of medication treatment can change. The student entering third grade here was different than the student ending first grade going into second grade, and there was additional data put on the table. The district responded very quickly when receiving private diagnosis and reached a different conclusion. If the district was confronted with case law that says if you do that, that's going to be considered now in your decision earlier, does that have some chilling effect on school districts going forward? With the thought that, hey, if we decide different... There's new evidence. Doctors, experts in the field come to a conclusion that differed from earlier. Why would that have a chilling effect? Because I think, Your Honor, the snapshot rule preserves the integrity of the first decision, and if we reach a different decision now, it's a different decision. And that's going to be evaluated on the merits of that decision. We're not now going to take this subsequent decision and look back and second guess and Monday morning quarterback, all these things that the district court noted in various decisions. So how do you view the language in Susan N., which talks about the reasonableness of the district's initial decisions regarding a particular IEP, or the provision of special education services at all? Is it your view that the acquired evidence that is alluded to there  I think it does not, yes, I think it does not go to the initial question of eligibility. I think it may go to a case which is not the case before the court here. And that is a case where districts don't always have to evaluate. There could be a referral and there could be a determination that there's no need to evaluate. And so there is no evaluation. And then subsequently there's additional data. There are evaluations. But does that go to my question to Amiki, which is why not create a rule that says when there has been a child find problem, violation, then we allow after acquired evidence. But no child find obligation, no after acquired evidence. What's wrong with that rule? I'm not going to tell you there's anything wrong with your rule, Joe. Please, I invite you. I think, thank you, I think that if I were to be critical, it would be in the thought that school districts have to have some crystal ball looking out and not looking at the data that is on the table. Can I just follow up on that? It's not quite a crystal ball. I mean, appellant comes forth and says you made a mistake on February of 2016 because you didn't get the right administrative code required expert. And so forget the crystal ball. You just didn't follow the code. And so I'm not asking you to guess what that expert says. I'm just asking you to get that expert. And you didn't even do that. What do you say to that? What I say to that, and I think I agree that that could certainly be challenged, but it would be challenged on its face in that let's look at the faces at the table in February of 2016. Based on these concerns in the classroom and otherwise, you should have had this person or that person. That is still, I think, consistent with the snapshot. Well, Your Honor, because we can look at who was there and who was not, not the opinion of someone later on. And so even if it is consistent with the snapshot rule, and let's just say we apply the snapshot rule, appellant comes forth seemingly more or less content with the snapshot rule. But more or less content with the snapshot rule because he thinks that you didn't follow the code on February 8, 2016. And so far you've talked about, you know, defending the snapshot rule. I assume under the premise that you feel pretty good about your position if the snapshot rule remains in effect. But what do you say to his argument that you failed even applying the snapshot rule? The district, not you, the district. There, thank you, there has to be some notice. There has to be some indicia. There has to be, IDEA is not a gotcha game. And even the procedural rules are not a gotcha game. Appellant spoke to this when he talked about procedural violations having to have substantive effect, substantive impact, some deprivation. Here in the district court talked about this, specifically at JA 18, page 15, talked about the fact that there was typical behaviors. The fact that the assessment showed the student could comply mostly with directions, behavioral incidents. Well, let's just get most pointed. There's a rule out diagnosis on autism. Why wasn't on the basis of a rule out diagnosis, you can't rule out diagnosis. Why doesn't that create the suspicion necessary to trigger the code for an expert to look into autism as of February 2016? Two reasons. Number one, that very expert said let's wait and see. Number one. And she was at the table. And often we don't have appellants experts sitting there. We have a privately secured expert sitting there saying let's wait and see, number one. Number two, it is not substantiated by all the other data. Who knows student best educationally? Teacher. When you look at all of this performance and appellants try and say. I'm sorry, Your Honor. I thought I heard you say there isn't corroboration by everyone, essentially everyone there. That's a requirement? It's not a requirement, but what I'm saying, Your Honor, is for child fine to have some effect, for there to be a child fine violation, there has to be notice to the school district that there was an issue and they took no action. It's a responsibility to identify, properly evaluate, make the correct determination, and then address the need. Here. There's no uniformity of opinion at the table, though. I love the imagery, though. But there's no uniformity, right, of opinion. And I thought the whole point of the appellant and the papers was there's a difference of opinion among the people. Yes. At the table. Even putting after quiet evidence aside. Yes. And, Your Honor, do you want me to respond? I didn't interrupt, did I? Oh, no, this is my pose where I'm going to listen. Thank you, Your Honor, I shall respond. The IDEA does not require unanimity of decision-making. State regulation doesn't require unanimity of decision-making. And there is significant, although not given, I think, real significance by the amici, there's significant procedural protections. There could have been a request for an independent evaluation. Further, and this has not been discussed at all, but following Schaefer v. Wiest, many jurisdictions, including New Jersey, adopted, changed the standard back and codified pre-Schaefer v. Wiest burden of production and proof. And JSA 18A4611 puts the burden on the school district to prove that they were right. So this thought that, and again, not this case where you have well-articulated concerns at the table with private experts and counsel, there was even an advocate, et cetera. But when you've got a family that does not have resource or there's some question, simple petition has to be filed, and then it's up to the school district to prove what they did was correct. Similarly here, Your Honor, if there's not consensus, family can simply challenge through due process, then the school district has to prove the correctness of the decision. But here's what I don't understand about what you're proposing, right? In the particular circumstance we find ourselves, after the snapshot, right, February 8th, there is a determination of disability. When I look at Susan N., it says, you know, we all know what it says, but I'll read it for dramatic effect. You know, while a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative, useful in determining whether Congress's goal has been reached for the child involved. And then it goes on. I understand here, as my colleague Judge Phipps pointed out, that Judge McNulty said he thought it was not relevant. We can review that. But your adversary talked about, you know, the pre and post. Let's just talk pre for a second. There is no uniformity at that table, and in fact, the argument is there are many signs from both teachers, different tests that were administered, that there was disability. You could come to different conclusions, but with that as a base, and looking at what Susan N. says, when you take those together, isn't the route to take here to send it back to the district court to have them consider, they clearly didn't actively consider the information that came after, the determination by the board or by the district, I'm sorry, that there was a disability, the other evidential matters that they could have taken into account. Isn't that the way to go? And if not, why not? I say respectfully no, Your Honor, and obviously I'm out of time. I'm going to respond to your question. I think respectfully there's an overstatement of need in the data and the issues before the multidisciplinary committee. This was not a student who was struggling to learn and was not making progress. The student was progressing, the student was progressing academically, the student was progressing behaviorally. In fact, the behavioral incidents, and there's great attention to three of them in the record, in a trial record which stretches 900 pages and takes almost a year to go through full hearing, amounted to less than 5% of the student's time. The student made a year of reading progress in five months' time with the supplemental support that was provided. The student received social... Well, I mean, the district court describes in the struggling, in the page you just cited from. But I do beg your pardon, I interrupted, I'm sorry. Thank you, Your Honor, may I continue? Yes. I think that in summarizing the data, the district court concludes enough was looked at, enough was considered, so that there are no outstanding questions. And this isn't even getting to the issue of adverse effect and impact and need, which were briefly discussed in questions before. But solely on the basis of disability, Dr. McGuffin is sitting there saying, wait and see. Right? I'm not going to rule it out, but wait and see. There's no medical diagnosis, and the student is making appropriate progress. As I said earlier, Your Honor, IDEA and its rules are not a gotcha game. If that student is learning, if that student is making progress, even a later classified and found eligible student, looking at that student, that student is making progress. And both the ALJ, Judge Betancourt, as well as the district court judge, I think got it right in concluding that there was enough information on the table. No additional assessments are required, and no additional look is even needed at post hoc data, which wasn't available to that multidisciplinary committee. I have one really quick follow-up, which is I asked you a question a while ago about why there wasn't a procedural error that the district committed on February 8, 2016, and you said there's two reasons. I caught the first one. The first one was that McGuffin said wait and see. What was the second one? Do you remember? I think the second one was looking at the incredibly comprehensive nature of the data that had been collected. Judge, in not only district assessments and evaluations, but also the inclusion of three different experts and forms of data from the district, you're asking for a per se rule, an expert that says wait and see is good enough. You're asking that wait and see coupled with comprehensive other data suggests that the child find was probably met. That is correct, Your Honor, and I would say that these cases are so fascinating from a legal standpoint, because every student is different. There are 13 different categories of eligibility, that even in a specific cohort of first graders, autism, for example, it's a spectrum. And Andrew talked about this, not to go too far down the rabbit hole, if I may, but Rowley left open this question of what's progress for all students that Andrew then had to determine, because there's such a broad swath of students in how disability affects, Your Honor. There has to be some, getting back to your question, there has to be some indicia that we didn't see everything, that there are more  And I would say that in my way of assessment, evaluation, the people that were there, they were sufficiently answered to conclude the student was not eligible in the moment. Judge Cowen, do you have anything further, sir? Counsel, just one thing, as I read your, it appears to me you're pushing in favor of the snapshot rule, so long as what the district did at the time was done properly, it crossed all the T's and dotted all the I's, and if, as Judge Phipps mentioned, if after acquired evidence shows that there's further need, the student should make another submission, and with the new information. Yes, that is correct, Your Honor. And we cannot allow after acquired evidence in, so long as the district has done. Is that correct? Yes, Judge, it is. That is our position, Your Honor, yes it is. I think the only after acquired evidence that would be relevant would be evidence that was available at the time that was missed. Evidence, there's a teacher that saw certain behaviors and she wasn't asked about it. There's an evaluation that was submitted that wasn't talked about. But evidence that's created after, evidence that comes in the form of hired evaluators or experts by parents after opining back, that should be excluded. Thank you. Thank you, Judge. Thanks so much. Very briefly, Dr. McGuffick did not say wait and see. I refer the Court to JA 1245 and 1246 of the appendix. She was very clear that she wanted to intervene early and provide services. And another point in her testimony, I don't have quite the citation for the appendix, but she told the district during the IEP meeting, if you don't intervene now and provide services, you're going to be back at the table classifying a year later because of this behavior. And that's exactly what happened. If you look at the Platt report, the child is actually slamming his head against the wall, there's a whole bunch of behavioral incidents. So this assertion that McGuffick said wait and see, that is just wrong. With respect to disability, the statute defines a child with a disability as you have to have one of the four disabling conditions, and then by reason thereof need special education. So, you know, you can't assess need without having first qualified assessed for disability. With respect to the last issue that I would like to address to the Court is later acquired evidence is directly relevant to disability. Forrest Grove v. TA at page 245 of the opinion, the Supreme Court expressly acknowledged Congress' acknowledgement of the paramount importance of properly identifying each child eligible for services. So I think later acquired evidence is directly relevant to disability. And the important thing is if this Court were to hold that later acquired evidence is not relevant to disability, it would incentivize school districts to perform cursory evaluations, and that's directly contrary to child fine. And I don't think that squares with Forrest Grove. Thank you. I guess I'm going to leave now. But if you have any questions. I have 13 seconds left on my two minutes. I'm only going to take two seconds. As long as you have the ability to, if you obtain later acquired evidence, which wasn't available at the time of the original determination, why can't you just make a new filing? Well, Congress gave, I would really, I don't want to repeat Ms. Valverde's argument, but Congress gives the parents an opportunity and a right to challenge the identification of the child. And this goes to identification of disability. They have to have a remedy for that failure to begin with. How can you challenge it so long as the school district did the right thing in the first instance? They did the right thing based upon what was before them. They crossed all the T's and blocked the I's after acquired evidence comes up. File a new proposal. That's not this case, but I understand what you're saying. I could tell you I would not be arguing before this court for that after acquired evidence. If the school district properly assessed and they got a neurodevelopmental pediatrician or whatever and they said this child does not have autism. People may disagree, but the school district did what it's supposed to do. I think that would be a very difficult challenge to make. And I personally probably would not bring that challenge representing a parent. But in this case, that did not happen here because the regulation said. I might as well just ask you what about the rule that says in order to bring after acquired evidence, you have to approve a child fine violation. It all circles back to the child fine issue. The thing that you've made clear is that independent of after acquired evidence, even if you apply the snapshot rule, your client should prevail. Yes. Should I say thank you now? It's time for me to say thank you. Thank you to all counsel. We appreciate it.